J-S60002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OSCAR EARL FINK, III | : | |
| | : | |
| Appellant | : | No. 963 MDA 2019 |

Appeal from the Judgment of Sentence Entered May 9, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005808-2018

BEFORE:   SHOGAN, J., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 20, 2019**

Appellant, Oscar Earl Fink, III, appeals from the judgment of sentence entered on May 9, 2019, in the York County Court of Common Pleas.  After review, we affirm.

The trial court set forth the relevant facts and procedural history of this matter as follows:

> On August 31, 2018[,] at approximately 3:00 p.m., Thomas Russell, [owner of the]  Northern York Grocery Outlet located at 1500 North George Street in the county of York, became suspicious of [Appellant] after observing [Appellant] surveil customers while carrying a plain black plastic bag. Acting on his suspicion that [Appellant] was stealing merchandise, Mr. Russell began to monitor [Appellant] on the store's security cameras. When reviewing the entire security footage, Mr. Russell observed [Appellant] concealing merchandise. Mr. Russell waited to see if [Appellant] would pay for the merchandise at the register. When

_____

[*] Retired Senior Judge assigned to the Superior Court.

[Appellant] exited the store without paying, Mr. Russell approached him outside of the store at which time [Appellant] handed Mr. Russell the concealed merchandise. When Mr. Russell alerted [Appellant] that he called the authorities to investigate the retail theft, [Appellant] began to run eastbound on George Street toward Super 8 Motel and Mr. Russell immediately pursued on foot.

During the foot pursuit, Mr. Russell dialed 911 to provide a description of the perpetrator. Mr. Russell described the perpetrator as short, large, and wearing a white t-shirt, shorts, and a fishing hat. When Officer Donald Godfrey of the Northern York County Regional Police Department responded to the call, he observed [Appellant] run inside of the Super 8 Motel. After a brief pursuit on foot and by car, Officer Godfrey eventually tackled [Appellant] and placed him under arrest.[1] Mr. Russell was present at the site of [Appellant's] arrest and confirmed his identity as the person he observed on camera committing theft.

Ashley Keefer, Esquire, represented [Appellant] during trial proceedings. Following a jury trial on May 9, 2019, the jury unanimously convicted [Appellant] and the [c]ourt … sentenced [Appellant] to six (6) to twenty-four (24) months of confinement in a state correctional institution. On May 13, 2019, [Appellant] filed a counseled post-sentence motion challenging the weight of the evidence adduced at trial and the trial court's denial of [Appellant's] motion for mistrial. This [c]ourt denied [Appellant's] post-sentence motion by Order on May 16, 2019.

Trial Court Opinion, 7/26/19, at 2-3. On June 14, 2019, Appellant filed a timely notice of appeal. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant avers that the trial court abused its discretion when it denied Appellant's motion for a mistrial. Appellant's Brief at 4. Appellant

---

[1] The Commonwealth charged Appellant with one count of retail theft, 18 Pa.C.S. § 3929(a)(1).

notes that when he was arrested, he initially refused to provide his name. *Id.* at 7. However, police obtained a machine to read Appellant's fingerprints. *Id.* at 7. Officer Donald Godfrey testified that when Appellant saw the fingerprint-reading machine, Appellant provided his name but also said "[T]here is a warrant." *Id.* at 7, 12; N.T., Trial, 5/9/19, at 84. Appellant asserts that this testimony concerning a warrant revealed to the jury Appellant's involvement in other criminal activity requiring a mistrial. *Id.* at 12. After review, we conclude that Appellant is entitled to no relief.

A trial court's denial of a motion for a mistrial is reviewed under an abuse-of-discretion standard. *Commonwealth v. Kerrigan*, 920 A.2d 190, 199 (Pa. Super. 2007). "The central tasks confronting the trial court upon the making of the motion were to determine whether misconduct or prejudicial error actually occurred, and if so, to assess the degree of any resulting prejudice." *Id.* (citation omitted). When confronted with a motion for mistrial due to a reference to criminal behavior, "the nature of the reference and whether the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required." *Id.* (quoting *Commonwealth v. Guilford*, 861 A.2d 365, 370 (Pa. Super. 2004)). "A singular, passing reference to prior criminal activity is usually not sufficient to show that the trial court abused its discretion in denying the defendant's motion for a mistrial." *Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa. Super. 2008).

The trial court addressed Appellant's claim of error as follows:

> In the case at bar, during defense counsel's cross-examination of Officer Godfrey, defense counsel attempted to elicit the circumstances surrounding [Appellant's] disclosure of his identity at the time of his arrest and thereafter. (N. T. Trial, May 9, 2019, pp. 83-84.). In doing so, Officer Godfrey indicated the following:
>
>> What happened is we brought in a fingerprint reader, which you put your thumb on it and it runs fingerprints through the system. As soon as the fingerprint reader [entered] the room [Appellant] advised My name is Oscar Fink there is a warrant -- I am sorry. My name is Oscar Fink.
>
> (Id., pp. 84-85.).[2] Defense counsel immediately moved for a mistrial because the officer repeated a statement made by

---

[2] For context, the relevant exchange between Appellant's counsel and Officer Donald Godfrey is set forth in greater detail below:

Q. Okay. Now, my client tried to run away, correct, or he did run away?

A. From myself?

Q. From you.

A. Yes.

Q. You would agree with me that he was acting clearly belligerent?

A. Verbally, not physically.

Q. Okay. But he was acting pretty excited?

A. No.

Q. He wasn't flailing around at all?

A. No, I handcuffed him immediately so he wasn't flailing.

Q. He didn't fake a seizure?

A. Yes.

Q. He did?

A. Yes.

Q. So he wasn't acting right?

A. I guess it takes a determination what right might be.

Q. So you took him to the hospital, correct?

A. He requested to go to the hospital, correct.

Q. And you were there for at least three hours?

A. At least, yes.

Q. And he did ultimately give you his name after he woke up in the hospital, correct?

A. That is not the chain of events. He ultimately gave up his name, but that is not the way it occurred.

Q. Isn't that what you said on direct?

A. No. She asked if he gave his name and I said yes. What occurred is he faked seizures, he advised he didn't know where he was, he didn't know his name. Initially at the scene he would not give me his name. He told me he would give me his name once I called an ambulance. At the hospital he kept saying he was in Lancaster and didn't know his name.

What happened is we brought in a fingerprint reader, which you put your thumb on it and it runs fingerprints through the system. As soon as the fingerprint reader walked in the room he advised my name is Oscar Fink there is a warrant -- I am sorry. My name is Oscar Fink.

[Appellant] indicating "there is a warrant." (Id.). This [c]ourt denied the request. When asked if [Appellant] would like a curative instruction, defense counsel unequivocally responded in the negative. (Id.). Further, defense counsel did not request any curative or other special instruction at the time of the charge conference. (Id., p. 93.). The statement, "[T]here is a warrant" abruptly came to a halt as Officer Godfrey smoothly redirected his own testimony. The trial [c]ourt even noted at the sidebar discussion that it was defense counsel, and not the Commonwealth, who elicited the statement from Officer Godfrey. (Id., pp. 84-85.). This single, passing reference to [Appellant] potentially having a past criminal history is not sufficient to prove that the trial [c]ourt abused its discretion in denying [Appellant's] motion for mistrial. The statement, "My name is Oscar Fink there is a warrant" is not conclusive of any specific person's past criminal history.

Trial Court Opinion, 7/26/19, at 6-7 (some internal quotation marks omitted).

We agree with the trial court's analysis. The Commonwealth did not elicit the testimony in question; rather, it was Appellant's counsel's question, and the trial court stated in a sidebar discussion that Appellant's counsel was "trying to put words in the officer's mouth as to when he got [Appellant's] name[.]" N.T., Trial, 5/9/19, at 84-85. The trial court continued: "It really doesn't tell the jury anything and I don't know what the warrant was for, so I am not going to stop this trial on this testimony." *Id.* at 85. The trial court offered to provide a curative instruction, but Appellant refused. *Id.*

_____

ATTORNEY KEEFER: Objection, can we approach?

THE COURT: You may approach.

N.T., Trial, 5/9/19, at 82-84.

After review, we cannot conclude that Officer Godfrey's errant statement, wherein he mentioned the word "warrant," deprived Appellant of a fair trial, and we discern no prejudice.[3] Accordingly, there was no abuse of discretion in the trial court's denial of Appellant's motion for a mistrial, and we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2019

_____

[3] Moreover, if there was any prejudice, it was *de minimis*, and any error harmless due to the overwhelming evidence of Appellant's guilt. ***Commonwealth v. Morris***, 519 A.2d 374 (Pa. 1986). An error is harmless where the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the error is so insignificant by comparison, that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. ***Commonwealth v. Sneeringer***, 668 A.2d 1167, 1173 (Pa. Super. 1995) (citation omitted). The record reflects that Thomas Russell ("Mr. Russell"), owner of the grocery store, testified that he suspected that a man, later identified as Appellant, was shoplifting. N.T., Trial, 5/9/19, at 62. Utilizing the store's video monitor, Mr. Russell confirmed his suspicion that Appellant was stealing, and Appellant left the store without paying for the items he had secreted in his bag. ***Id.*** Mr. Russell approached Appellant outside of the store, and Appellant handed him the stolen items and ran. ***Id.*** at 64. Mr. Russell called the police, and Officer Donald Godfrey pursued Appellant and arrested him. ***Id.*** In court, both of the Commonwealth's witnesses, Mr. Russell and Officer Godfrey, identified Appellant as the perpetrator. ***Id.*** at 66, 71.